WILLIAM LORING & another *vs.* CITY OF BOSTON.

The mayor of the city of Boston caused an advertisement to be published, for about a week, in the daily papers of the city, stating that there had been a frequent and successful repetition of incendiary attempts, and offering a reward, to be paid by the city, for the apprehension and conviction of any person engaged in those attempts. *Held,* that this was not to be regarded as an unlimited offer, continuing till it should be formally withdrawn, but as limited to a reasonable time and that it ceased to be an offer, after the lapse of three years and eight months.

ASSUMPSIT to recover a reward of $1000, offered by the defendants for the apprehension and conviction of incendiaries Writ dated September 30th 1841.

At the trial before *Wilde*, J., the following facts were proved . On the 26th of May 1837, this advertisement was published in the daily papers in Boston : " $500 reward. The above reward is offered for the apprehension and conviction of any person who shall set fire to any building within the limits of the city. May 26 1837. Samuel A. Eliot, Mayor." On the 27th of May 183⁷ the following advertisement was published in the same papers : " $1000 reward The frequent and successful repetition of incendiary attempts renders it necessary that the most vigorous efforts should be made to prevent their recurrence. In addition to the other precautions, the reward heretofore offered is doubled. One thousand dollars will be paid by the city for the conviction of any person engaged in these nefarious practices. May 27 1837. Samuel A. Eliot, Mayor." These advertisements were continued in the papers but about a week ; but there was no vote of the city government, or notice by the mayor, revoking the advertisements, or limiting the time during which they should be in force. Similar rewards for the detection of incendiaries had been before offered, and paid on the conviction of the offenders ; and at the time of the trial of this case, a similar reward was daily published in the newspapers.

In January 1841, there was an extensive fire on Washington Street, when the Amory House (so called) and several others were burned. The plaintiffs suspected that Samuel Marriott, who then boarded in Boston, was concerned in burning said buildings. Soon after the fire, said Marriott departed for New York. The plaintiffs declared to several persons their intention to pursue him and prosecute him, with the intention of gaining the reward of $1000 which had been offered as aforesaid. They pursued said Marriott to New York, carried with them a person to identify him, arrested him, and brought him back to Boston. They then complained of him to the county attorney, obtained other witnesses, procured him to be indicted and prosecuted for setting fire to the said Amory House. And at the March term 1841 of the municipal court, on the apprehension and prosecution cf said Marriott. and on the evidence given and procured

by the plaintiffs, he was convict d of setting fire to said house, and sentenced to ten years' confinement in the state prison.

William Barnicoat, called as a witness by the defendants, testified that he was chief engineer of the fire department in Boston, in 1837, and for several years after ; that alarms of fire were frequent before the said advertisement in May 1837 ; but that from that time till the close of the year 1841, there were but few fires in the city.

As the only question in the case was, whether said offer of reward continued to be in force when the Amory House was burnt, the case was taken from the jury, by consent of the parties, under an agreement that the defendants should be defaulted, or the plaintiffs become nonsuit, as the full court should decide.

*Peabody & J. P. Rogers*, for the plaintiffs.

*J. Pickering*, (City Solicitor,) for the defendants.

SHAW, C. J.    There is now no question of the correctness of the legal principle on which this action is founded.    The offer of a reward for the detection of an offender, the recovery of property, and the like, is an offer or proposal, on the part of the person making it, to all persons, which any one, capable of performing the service, may accept at any time before it is revoked, and perform the service ; and such offer on one side, and acceptance and performance of the service on the other, is a valid contract made on good consideration, which the law will enforce. That this principle applies to the offer of a reward to the public at. large, was settled in this Commonwealth, in *Symmes* v. *Frazier*, 6 Mass. 344, and it has been frequently acted upon, and was recognized in the late case of *Wentworth* v. *Day*, 3 Met 352.

The ground of defence is, that the advertisement, offering the reward of $ 1000 for the detection and conviction of persons setting fire to buildings in the city, was issued almost four years before the time at which the plaintiffs arrested Marriott and prosecuted him to conviction ; that this reward was so offered in reference to a special emergency in consequence of several alarming fires ; that the advertisement was withdrawn and dis-

continued ; that the recollection of it had passed away ; that it was obsolete, and by most persons forgotten ; and that it could not be regarded as a perpetually continuing offer on the part of the city.

We are then first to look at the terms of the advertisement, to see what the offer was. It is competent to the party offering such reward to propose his own terms ; and no person can entitle himself to the promised reward without a compliance with all its terms. The first advertisement offering the reward demanded in this action was published March 26th 1837, offering a reward of $500 ; and another on the day following, increasing it to $1000. No time is inserted, in the notice, within which the service is to be done for which the reward is claimed. It is therefore relied on as an unlimited and continuing offer.

In the first place, it is to be considered that this is not an ordinance of the city government, of standing force and effect ; it is an act temporary in its nature, emanating from the executive branch of the city government, done under the exigency of a special occasion indicated by its terms, and continued to be published but a short time. Although not limited in its terms, it is manifest, we think, that it could not have been intended to be perpetual, or to last ten or twenty years, or more ; and therefore must have been understood to have some limit. It was insisted, in the argument, that it had no limit but the statute of limitations. But it is obvious that the statute of limitations would not operate so as to make six years from the date of the offer a bar. The offer of a reward is a proposal made by one party, and does not become a contract, until acted upon by the performance of the service by the other, which is the acceptance of such offer, and constitutes the agreement of minds essential to a contract. The six years, therefore, would begin to run only from the time of the service performed and the cause of action accrued, which might be ten, or twenty, or fifty years from the time of the offer, and would in fact leave the offer itself unlimited by time,

Supposing then that, by fair implication, there must be some limit to this offer, and there being no limit in terms, then by a

general rule of law it must be limited to a *reasonable time*, that is, the service must be done within a reasonable time after the offer made.

What is a reasonable time, when all the facts and circumstances are proved on which it depends, is a question of law. To determine it, we are first to conside" ....e objects and purposes for which such reward is offered. .'he principal object obviously must be, to awaken the attention of the public, to excite the vigilance and stimulate the exertions of police officers, watchmen and citizens generally, to the detection and punishment of offenders. Possibly, too, it may operate to prevent offences, by alarming the fears of those who are under temptation to commit them, by inspiring the belief that the public are awake, that any suspicious movement is watched, and that the crime cannot be committed with impunity. To acccmplish either of these objects, such offer of a reward must be notorious, known and kept in mind by the public at large ; and, for that purpose, the publication of the offer, if not actually continued in newspapers, and placarded at conspicuous places, must have been recent. After the lapse of years, and after the publication of the offer 'ia? been long discontinued, it must be presumed to be forgotten by the public generally, and if known at all, known only to a few individuals who may happen to meet with it in an old newspaper. The expectation of benefit, then, from such a promise of reward, must in a great measure have ceased. Indeed, every consideration arising from the nature of the case confirms the belief that such offer of reward, for a special service of this nature, is not urlimited and perpetual in its duration, but must be limited to some reasonable time. The difficulty is in fixing it. One circumstance, perhaps a slight one, is, that the act is done by a board of officers, who themselves are annual officers. But as they act for the city, which is a permanent body, and exercise its authority for the time being, and as such a reward might be offered near the end of the year, we cannot necessarily limit it to the time for which the same board of mayor and aldermen have to serve ; though it tends to mark

35 *

the distinction between a temporary act of one branch and a permanent act of the whole city government.

We have already alluded to the fact of the discontinuance of the advertisement, as one of some weight. It is some notice to the public that the exigency has passed, for which such offer of a reward was particularly intended. And though such discontinuance is not a revocation of the offer, it proves that those who made it no longer hold it forth conspicuously as a continuing offer ; and it is not reasonable to regard it as a continuing offer for any considerable term of time afterwards.

But it is not necessary, perhaps not proper, to undertake to fix a precise time, as reasonable time ; it must depend on many circumstances. It is somewhat analogous to the case of notes payable on demand, where the question formerly was, within what time such note must be presented, and, in case of dishonor, notice be given, in order to charge the indorser. In the earliest reported case on the subject, *Field* v. *Nickerson,* 13 Mass. 131, the court went no farther than to decide that eight months was not a reasonable time for that purpose.

Under the circumstances of the present case, the court are of opinion, that three years and eight months is not a reasonable time within which, or rather to the extent of which, the offer in question can be considered as a continuing offer on the part of the city. In that length of time, the exigency under which it was made having passed, it must be presumed to have been forgotten by most of the officers and citizens of the community, and cannot be presumed to have been before the public as an actuating motive to vigilance and exertion on this subject; nor could it justly and reasonably have been so understood by the plaintiffs. We are therefore of opinion, that the offer of the city had ceased before the plaintiffs accepted and acted upon it as such, and that consequently no contract existed upon which this action, founded on an alleged express promise, can be maintained.

*Plaintiffs nonsuit.*